IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| JAMAR BILLINGSLEY, | ) | |
| 5704 Falls Way Court | ) | |
| Fredericksburg, VA 22407 | ) | |
|     Plaintiff, | ) | Case Number:   3:20-cv-899 |
| | ) | |
|     v. | ) | |
| | ) | |
| AMAZON DATA SERVICES, INC. | ) | |
| 410 Terry Ave, N | ) | |
| Seattle, WA 98109-0000 | ) | |
|     Defendant. | ) | |

## **COMPLAINT**
(Trial by Jury Demanded)

COMES NOW, Plaintiff Alfonso Wells ("Plaintiff"), by and through undersigned counsel, and hereby submits his Complaint for damages against Defendant Amazon Data Services, Inc. ("Defendant"). In support of, Plaintiff states as follows:

### **PARTIES**

1. Plaintiff is an adult resident citizen of Virginia, residing at 5704 Falls Way Court, Fredericksburg, VA

2. Defendant Amazon Data Services, Inc. is a corporation with its registered office located at 100 Shockoe Slip FL 2, Richmond, VA 23219-4100 and its principal place of business located at 410 Terry Ave., N, Seattle, WA 98109-0000.

### **JURISDICTION AND VENUE**

3. This action is being brought pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(a)(3) and 42 U.S.C. Section 1981 and includes any and all federal law claims plead herein for which jurisdiction and venue is attached.

4. Supplemental jurisdiction is further proper pursuant to 28 U.S.C. § 1367 in that Plaintiff's other claims are so related to the claims which this court has original jurisdiction that they form part of the same case.

5. Venue is proper in this district, pursuant to 28 U.S.C. Section 1391 because substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## ADMINISTRATIVE REMEDIES

6. Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission.

7. The EEOC conducted an investigation on Plaintiff's claim. On August 20, 2020, the Equal Employment Opportunity Commission issued a dismissal and notice of right to sue.

8. The Complaint is being filed within ninety (90) days of the Plaintiff' receipt of the Notice of Right to Sue. Plaintiff has complied with all statutory and administrative prerequisites to filing suit.

## FACTS

9. Plaintiff was employed by Defendant Amazon Data Services, Inc.

10. Amazon Data Services, Inc. is a subsidiary of Amazon Web Services, Inc.

11. Amazon Data Services, Inc. offers reliable, scalable, and inexpensive cloud computing services to individuals, companies, and governments.

12. Amazon Data Services, Inc. is headquartered in Seattle, Washington, and employs more than 550,000 employees worldwide.

13. Amazon Data Services, Inc. has a Data Center in Manassas, Virginia, where Plaintiff was employed.

14. Plaintiff was hired on October 16, 2017 as Decom Data Technician.

15. In the summer of 2018, Plaintiff began working under Bryan Pandolfi-Malone ("Malone") who operated as Decom Manager.

16. When Malone became Decom Manager, there were five African American employees, including Plaintiff, on the Decom team.

17. Two of the African American employees were able to transfer to another manager and shortly received promotions.

18. Malone present Plaintiff with a project that he insisted would help Plaintiff be promoted from his position as a level three Decom Data Tech to a level four Decom Data Tech.

19. Plaintiff accepted the position under the impression that he would be promoted to level four by Malone upon completion.

20. Plaintiff was told that the project would last only six months. However, the projected listed nine months.

21. With Plaintiff working on the project, only two African American employees remained on Malone's team.

22. In the summer of 2019, one of the two remaining African American employees, Alfonso Wells, was unjustly and wrongfully terminated.

23.  When Plaintiff returned to the team in September 2019, only he and one other African American employee remained.

24. The other African American employee was offered a project to work on and was transferred to a different manager.

25. Under this manager, the African American employee was promoted to a level four Decom Data Tech.

26. Plaintiff requested numerous times to receive assistance with the promotion that had been promised by Malone. However, Malone refused to assist Plaintiff with each request despite informing him that he would.

27. Malone has not promoted any African American employees under his management.

28. African American employees have only been able to secure promotions by transferring to work under other managers.

29. However, Malone has helped promote numerous similarly situated white employees

30. Plaintiff informed Malone that he had an upcoming interview in another department. Plaintiff had previously informed Malone of the interview.

31. The following day Malone got very loud and threatening with Plaintiff.

32. Malone told Plaintiff that they were working in the red zone.

33. When Plaintiff left the red zone, Malone told Plaintiff it was time to do a rack move at another building.

34. Plaintiff acknowledged Malone and informed him that he just needed to check his email for updated information about the interview and the head over for the rack move.

35. Malone began inexplicably yelling at Plaintiff in front of the team, told Plaintiff to "zip his mouth," and that nothing was up for discussion.

36. Because of the hostility Plaintiff experienced, Plaintiff decided to pack up his stuff and leave the building.

37. Malone followed Plaintiff out of the building and was continuing to yell at Plaintiff simply because he wanted to check his email.

38. Plaintiff reported this incident to Malone's manager and informed him that he did not like the interaction with Malone, that their relationship had become hostile, and that he wanted to be transferred to a different manager.

39. Malone's manager told Plaintiff he would talk with Malone and that he would come up with a solution. However, Plaintiff never heard back from Malone's manager regarding this incident.

40. Following this incident, Malone would act normal in front of other employees. However, during Plaintiff "1 on 1" meetings Malone would be very aggressive and hostile with Plaintiff.

41. Plaintiff again requested to be transferred to another manager as their relationship had become too tumultuous for a healthy work environment. Further, knew the Malone was not treating similarly situated white employees with this behavior.

42. Malone told Plaintiff he would never be moved to another manager, that nothing would ever be done about it, and laughed in his face.

43. Plaintiff reached out each are and was told to contact Amber Klimcyzk ("Klimcyzk").

44. Plaintiff informed Klimcyzk of all of the issues that had happened with Malone and that he believed that it was because he is African American.

45. Klimcyzk launched an investigation informed Plaintiff that Malone had been coached and that it should not happen again.

46. Klyimcyzk further stated that she checked the performance tracking tool, Ingeni, and found that no information had ever been placed in the system for Plaintiff.

47. Klyimcyzk, and Malone's manager's, required him to update Plaintiff's information in to Ingeni.

48. Ingeni is important because it tracks employees' performance and is key for consideration for a promotion.

49. Because Plaintiff's information in Ingeni was blank and never completed by Malone it was unlikely that he had ever been considered, or would he ever be considered, for a promotion.

50. In January 2020, Malone contacted Plaintiff and said he wanted to talk about his work performance for two days in the previous week.

51. Malone told Plaintiff that he was not doing a good job because he did not get much work done.

52. Plaintiff had worked in a two-person team meaning that if he did not get much work done, his partner did not get much work done either. However, only Plaintiff was called into the office.

53. Further, it snowed on these two particular days and employees were not required to stay the entire day for the safety.

54. Once Malone recognized that his points were invalid, he attempted to make up more reasons as to why he believed Plaintiff's work was not good.

55. Plaintiff informed Malone that he was not pleased with the way that he talked to Plaintiff and he did not appreciate Malone aimlessly searching for reasons to say that his performance was bad.

56. Malone snatched his laptop and slammed it down in front of Plaintiff saying that they would talk on a later day.

57. Plaintiff informed Malone that he would be reporting him to HR as well as his boss, and that he was going home for the day because of his action.

58. After a couple days, Plaintiff met with Malone's manager and Klimczyk regarding the laptop slamming incident.

59. Both said that Malone would be coached and that this behavior would not continue, and that Plaintiff and Malone should continue working together to get Plaintiff promoted.

60. Plaintiff applied to different positions so that he could remove himself from the hostile environment that Malone created and because he knew that Malone would never promote him.

61. However, Malone blocked every attempt by bad purposely bad mouthing him to other managers so they would not hire him.

62. Plaintiff had even contacted another someone who was willing to help him prepare for interviewing for these positions.

63. She rescinded her offer to assist Plaintiff after Malone spoke with her about Plaintiff.

64. Malone blocked every attempt Plaintiff made to advance career without cause.

65. Malone would say that Plaintiff was not succeeding at his job but never noted any performance issues or performance plans in Ingeni for Plaintiff.

66. Plaintiff had to leave the team all together to get away from Malone

67. Plaintiff's new manager informed Plaintiff that the performance tracking system still does not have any information regarding Plaintiff in the system which may be problematic if Plaintiff wants to receive a promotion in the future.

68. All of the information needed to be placed in the system is held by Malone.

69. Thus, even after Plaintiff has left Malone's team, Malone is still blocking Plaintiff's potential to advance in his career.

70. During Plaintiff's time under Malone, Malone has only promoted Caucasian members of the team who were less experienced than Plaintiff.

## **CAUSES OF ACTION**

### COUNT I: RACIAL DISCRIMINATION: FAILURE TO PROMOTE

71. Plaintiff hereby realleges all of the foregoing paragraphs as if fully restated herein.

72. Plaintiff is an African American male.

73. Plaintiff is a member of a protected class who was subjected to race discrimination in violation of Title VII of the Civil Rights Act of 1964.

74. Plaintiff was employed by Defendant as a Rack Decom Datatech.

75. Plaintiff worked under the management of Malone.

76. Plaintiff had been promised assistance in receiving a promotion with Malone's help soon after Malone began working.

77. Malone has refused and even has blocked multiple attempts by Plaintiff to receive a promotion.

78. Malone has blocked Plaintiff's attempts to be promoted by refusing to assist Plaintiff in receiving a promotion.

79. Malone has blocked Plaintiff's attempts to be promoted by bad mouthing Plaintiff, without cause, to other managers so they would not hire him.

80. Malone has blocked Plaintiff's attempts to be promoted by refusing to input Plaintiff's performance into the performance tracking system despite being asked by HR and his manager to do so.

81. Malone has blocked Plaintiff's attempts to be promoted by refusing to transfer Plaintiff to a different manager so that he could seek a promotion and promoting other Caucasian employees with less experience over Plaintiff.

82. The act and violation of Defendant resulted in a knowing, willful, and international violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964.

83. As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages, potential earnings, and sustained other pecuniary loss.

84. Defendant's history of racist and discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused him, and others, to suffer deep pain, humiliation, anxiety, and emotional distress.

85. The unlawful actions of Defendant complained above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## COUNT II: RETALIATION

86. Plaintiff hereby realleges the forgoing paragraphs as if fully stated herein.

87. Plaintiff is an African American male.

88. Plaintiff is a member of a protected class who was subjected to disparate treatment because of his race in violation of Title VII of the Civil Rights Act of 1964.

89. Plaintiff was employed by Defendant as a Rack Decom Datatech.

90. Plaintiff reported Malone's racist behavior to his manager and HR which is a protected activity.

91. As a result of Plaintiff's reports, Malone became increasingly aggressive towards Plaintiff.

92. Malone yelled and humiliated Plaintiff in front of employees on two occasions to the point where Plaintiff had to leave for the day.

93. Malone became more scrutinous on Plaintiff's work.

94. Malone blocked attempts for Plaintiff to receive a promotion.

95. Malone bad mouth Plaintiff to other managers so that they would not hire him.

96. The act and violation of Defendant resulted in a knowing, willful, and international violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964.

97. As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages, potential earnings, and sustained other pecuniary loss.

98. Defendant's history of racist and discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused him, and others, to suffer deep pain, humiliation, anxiety, and emotional distress.

## COUNT II: HOSTILE WORK ENVIRONMENT

99. Plaintiff hereby realleges the forgoing paragraphs as if fully stated herein.

100.    Plaintiff is an African American male.

101.    Plaintiff is a member of a protected class who was subjected to disparate treatment because of his race in violation of Title VII of the Civil Rights Act of 1964.

102.    Plaintiff was employed by Defendant as a Rack Decom Datatech.

103.    Malone became increasingly aggressive towards Plaintiff.

104.    Malone yelled and humiliated Plaintiff in front of employees on two occasions to the point where Plaintiff had to leave for the day.

105.    Malone became more scrutinous on Plaintiff's work.

106.     Malone blocked attempts for Plaintiff to receive a promotion.

107.     Malone bad mouth Plaintiff to other managers so that they would not hire him.

108.     Similarly situated Caucasian employees were not subjected to the same treatment that Plaintiff received.

109.     The act and violation of Defendant resulted in a knowing, willful, and international violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964.

110.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages, potential earnings, and sustained other pecuniary loss.

111.     Defendant's history of racist and discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused him, and others, to suffer deep pain, humiliation, anxiety, and emotional distress.

## RELIEF

112.     Plaintiff requests that the Court issue the following relief:

   a) Enter declaratory relief declaring that Defendant have engaged in race discrimination and constitutional violations under 42 U.S.C. Section 1981;

   b) Award Plaintiff compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of his peers;

   c) Award Plaintiff attorney's fees, cost and expenses of litigation; and

   d) Award such other relief to which Plaintiff may be entitled to under law.

   **WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount exceeding the jurisdictional requirements of this Court, all together with

Court costs, including attorney's fees, plus pre and post judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted this 20th day of November 2020.

**Jamar Billingsley**

*/s/ Alexander Taylor*
Alexander Taylor
1622 W Main St.
Richmond, VA 23220
Fax:866-446-6167
alextaylor@alextaylorlaw.com